## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANLEY BENNETT, an individual; | : |
| MICHAEL HUCKER, an individual; | : |
| FIREARMS POLICY COALITION, INC.; | : No. |
| THE SECOND AMENDMENT | : |
| FOUNDATION; and NEW JERSEY | : |
| SECOND AMENDMENT SOCIETY, | : |
| | : |
| Plaintiffs, | : **COMPLAINT FOR** |
| | : **DECLARATORY AND** |
| | : **INJUNCTIVE RELIEF** |
| v. | : |
| | : |
| ANDREW DAVIS, in his official capacity | : |
| as Chief of Police of the Borough of Clayton | : |
| Police Department; ROBERT D. WHITE, in | : |
| his official capacity as Public Safety | : |
| Director of the Town of Guttenberg Police | : |
| Department; JUAN BARRERA, in his | : |
| official capacity as Officer in Charge of the | : |
| Town of Guttenberg Police Department; | : |
| GURBIR S. GREWAL, in his official | : |
| capacity as Attorney General of New Jersey; | : |
| and PATRICK J. CALLAHAN, in his | : |
| official capacity as Superintendent of the | : |
| New Jersey State Police, | : |
| | : |
| Defendants. | : |

Plaintiffs STANLEY BENNETT, MICHAEL HUCKER, FIREARMS POLICY

COALITION, INC. ("FPC"), THE SECOND AMENDMENT FOUNDATION

("SAF"), and NEW JERSEY SECOND AMENDMENT SOCIETY ("NJ2AS")

(collectively, "Plaintiffs"), by and through counsel of record, bring this complaint

against Defendants, and allege as follows:

## INTRODUCTION

1.      Plaintiffs Stanley Bennett, Michael Hucker, and all other similarly situated individuals who are legally eligible to possess and acquire firearms, have a fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person and outside their homes, including in their vehicles, places of business, and otherwise in public, for the purpose of self-defense.

2.      But the State of New Jersey has criminalized the carry of handguns by subjecting those who unlawfully do so—even if by an otherwise law-abiding person who carries a handgun to exercise their fundamental right to bear arms in public for self-defense—to punishment for a crime of the second degree, N.J.S.A. § 2C:39-5(b), a serious felony—placing such conduct among crimes for aggravated assault resulting in serious bodily injury, aggravated arson, robbery, and sexual assault.

3.      Adding further insult to constitutional injury, should an unlicensed person be convicted for exercising his rights by carrying a handgun in public, he would lose his Second Amendment rights under state and federal law. E.g., N.J.S.A. § 2C:39-7; 18 U.S.C. § 922(g).

4.      The State's few exceptions to this broad criminal statute do not allow law-abiding citizens to carry a handgun outside their home. N.J.S.A. § 2C:39-6(e)-(g). Indeed, the law sweeps so broadly that it bars anyone from having a handgun in their "possession" unless they can show that they fall into one of the limited

exemptions provided in a parallel statute. *S`ee id.* §§ 2C:39-5(b), 2C:39-6(e)-(g).

5. On the other hand, if one can obtain a New Jersey handgun carry permit under N.J.S.A. § 2C:58-4 (a "carry permit"), he can carry handguns outside the home. "Any person who holds a valid permit to carry a handgun issued pursuant to [N.J.S.A § 2C:58-4] shall be authorized to carry a handgun in all parts of this State, except as prohibited by subsection e" of N.J.S.A. § 2C:39-5. N.J.S.A. § 2C:58-4.

6. And "[o]ne [carry] permit shall be sufficient for all handguns owned by the holder thereof, but the permit shall apply only to a handgun carried by the actual and legal holder of the permit." *Id*.

7. But to obtain a carry permit, a private citizen must apply to either their chief police officer or to the state police superintendent, depending upon their circumstances, as required by N.J.S.A § 2C:58-4(c).

8. This police official has the discretion determine whether the requirements, including "justifiable need, have been met, and to approve or disapprove the application accordingly. N.J.S.A. § 2C:58-4(c).

9. And that "justifiable need" requirement—conditioning the issuance of a permit to carry a handgun on proof of an "urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun," N.J.S.A. § 2C:58-4(c)—statutorily disqualifies all

ordinary law-abiding citizens, preventing them from obtaining a Carry Permit.

10.     The State of New Jersey's laws, regulations, policies, practices, and customs individually and collectively deny millions of individuals who reside in New Jersey, like Plaintiffs, their members and supporters, and others like them, their fundamental, individual right to bear loaded, operable handguns outside the home through oppressive criminal statutes combined with a Carry Permit system that requires "justifiable need" and other subjective requirements that regular citizens cannot meet (the "Regulatory Scheme")[1].

11.     Consequently, because of the Regulatory Scheme and Defendants' enforcement of it, neither Plaintiffs nor any other ordinary law-abiding adult can exercise their fundamental right to bear arms in New Jersey without being subject to severe criminal sanction.

12.     To be sure, Plaintiffs acknowledge the Third Circuit's decision in *Drake v. Filko*, 724 F. 3d 426 (3d Cir. 2013). Plaintiffs present this case as a good faith attempt to change the law as required to conform to the constitutional standards set forth in the Constitution's text, and as the Supreme Court has elucidated in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of*

---

[1]   The "Regulatory Scheme" specifically refers to N.J.S.A. §§ 2C:39-5(b), 2C:39-6, 2C:58-3(c)(5), 2C:58-4(a)-(f), 2C:43-3(a)(2), 2C:43-6(a)(2), and N.J.A.C. §§ 13:54-2.2, 13:54-2.3, 13:54-2.4(a)-(f), 13:54-2.5, 13:54-2.6, 13:54-2.7, 13:54-2.8, 13:54-2.9, and 13:54-2.10.

*Chicago*, 561 U.S. 742 (2010).

13.     The Second and Fourteenth Amendments do not merely protect home-bound rights. And because the right to keep and bear arms is not a "second-class right" to be "singled out for special—and especially unfavorable—treatment", *McDonald*, 561 U.S. at 778–79, 780, Plaintiffs bring this case to challenge the State of New Jersey's Regulatory Scheme, and the Defendants' actual and threatened enforcement of the same, which should and must, under the text of the Constitution, our Nation's history and tradition, and the Supreme Court's precedents, be declared unconstitutional and enjoined so that Plaintiffs and law-abiding individuals like them can exercise their constitutional right to bear arms—both inside and outside of their homes.

## JURISDICTION & VENUE

14.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New Jersey, of the rights, privileges, or immunities secured by the United States Constitution. To the extent Plaintiffs' claims may allege or may be construed to allege state law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

15.     Venue lies in this Court under 28 U.S.C. § 1391(b), as the events giving

rise to Plaintiffs' causes of action arose or exist in this District in which this action is brought.

## **PARTIES**

16.    Plaintiff Bennett is a natural person, a resident of the Borough of Clayton, in Gloucester County, New Jersey, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Bennett is also the holder of a current, valid federal firearms license (FFL), and has been for three-and-a-half years. Plaintiff Bennett is a member and supporter of Plaintiffs FPC, SAF, and NJ2AS.

17.    Plaintiff Michael Hucker is a natural person, a resident of the Town of Guttenberg, in Hudson County, New Jersey, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Hucker is also a member and supporter of Plaintiffs FPC, SAF, and NJ2AS.

18.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially but not limited to the Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy,

litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public who seek to exercise their right to carry firearms outside their homes, such as in vehicles, places of business, and other places in public, for self-defense. FPC has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Plaintiffs Bennett and Hucker, against Defendants' Regulatory Scheme, including through this action.

19.   Plaintiff The Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms, and the consequences of gun control. SAF has members and supporters nationwide, including in New Jersey. SAF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public who seek to exercise their right to carry loaded firearms outside their homes, such as in vehicles, places of business, and other places in public, for self-defense. SAF has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of

its members and supporters, including Plaintiffs Bennett and Hucker, against Defendants' Regulatory Scheme (as defined herein), including through this action.

20.    Plaintiff New Jersey Second Amendment Society ("NJ2AS") is a civil rights advocacy group dedicated to protection of the Second Amendment. NJ2AS has members across New Jersey who desire protect themselves and their constitutional rights. NJ2AS brings these claims on its own behalf and on behalf of its members. NJ2AS has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, including Plaintiffs Bennett and Hucker, against Defendants' Regulatory Scheme, including through this action.

21.    Defendant Andrew Davis is Chief of Police of the Borough of Clayton Police Department, in Gloucester County, New Jersey. In such capacity, Defendant Davis executes and administers the State's laws, including the Regulatory Scheme and the related regulations, policies, practices, and customs designed to enforce and implement the same, including its criminal laws on carriage of handguns in public, and the acceptance, processing, and approval or denial of applications for permits to carry a handgun filed by residents of Clayton, including the application of Plaintiff Bennett. Defendant Davis is therefore responsible for determining whether each such private citizen applicant has satisfied the statutory requirements for a carry permit, including whether the applicant has demonstrated a "justifiable need" within

the meaning of N.J.S.A. § 2C:58-4(c), N.J.A.C. § 13:54-2.3(a), and N.J.A.C. § 13:54–2.4(d)(1), and for approving or denying the applications. Defendant Davis has enforced and continues to enforce the "justifiable need" requirement against Plaintiff Bennett and other similarly situated individuals in Clayton, resulting in their ongoing inability to obtain a permit to carry handguns.

22.     Defendant Robert D. White is the Public Safety Director for the Town of Guttenberg Police Department, in Hudson County, New Jersey. In such capacity, Defendant White executes and administers the State's laws, including the Regulatory Scheme and the related regulations, policies, practices, and customs designed to enforce and implement the same, including its criminal laws on carriage of handguns in public, and the acceptance, processing, and approval or denial of applications for permits to carry a handgun filed by residents of Guttenberg. Defendant White is therefore responsible for the determinations of whether each such private citizen application has satisfied the statutory requirements for a carry permit, including with respect to the application of Plaintiff Hucker. Defendant White has enforced and continues to enforce the "justifiable need" requirement against Plaintiff Hucker and other similarly situated individuals in Guttenberg, resulting in their ongoing inability to obtain a permit to carry handguns.

23.     Defendant Juan Barrera is the Officer in Charge of the Town of Guttenberg Police Department, in Hudson County, New Jersey. In such capacity,

Defendant Barrera executes and administers the State's laws, including the Regulatory Scheme and the related regulations, policies, practices, and customs designed to enforce and implement the same, including its criminal laws on carriage of handguns in public, and the acceptance, processing, and approval or denial of applications for permits to carry a handgun filed by residents of Guttenberg, including the application of Plaintiff Hucker. Defendant Barrera is therefore responsible for determining whether each such private citizen applicant has satisfied the statutory requirements for a carry permit, including whether the applicant has demonstrated a "justifiable need" within the meaning of N.J.S.A. § 2C:58-4(c), N.J.A.C. § 13:54-2.3(a), and N.J.A.C. § 13:54–2.4(d)(1), and for approving or denying the applications. Defendant Barrera has enforced and continues to enforce the "justifiable need" requirement against Plaintiff Hucker and other similarly situated individuals in Guttenberg, resulting in their ongoing inability to obtain a permit to carry handguns.

24.     Defendant Gurbir S. Grewal is the Attorney General of the State of New Jersey. In such capacity, Defendant Grewal is the head of the State's Office of the Attorney General and Department of Law and Public Safety, which includes the Division of State Police, and holds statewide criminal jurisdiction to investigate and prosecute any indictable offense, he is therefore responsible for executing, delegating, or supervising the laws and regulations of the Regulatory Scheme which

govern the carrying of firearms in public and impose criminal sanctions for violations of the same. N.J.S.A. § 52:17B-108. Defendant Grewal is sued in his official capacity.

25.     Defendant Patrick J. Callahan holds the rank of Superintendent in the New Jersey State Police. Defendant Callahan is the executive and administrative head of the Division of the State Police, responsible for exercising, delegating, or supervising the powers and duties of that Division under the general supervision and oversight of Defendant Grewal. N.J.S.A. § 52:17B-7. In such capacity, Defendant Callahan is charged with executing and enforcing the State's criminal laws, including the laws and regulations of the Regulatory Scheme which govern the carrying of firearms in public and impose criminal sanctions for violations of the same. Defendant Callahan is sued in his official capacity.

## FACTUAL ALLEGATIONS

26.     Plaintiff Bennett is an active firearms dealer. As part of that business, he lawfully transports firearms to and from locations where such is permissible.

27.     Plaintiff Bennett meets all the general eligibility requirements for lawful and proper handgun possession and use, including those required under New Jersey law for the issuance of a permit to carry a handgun.

28.     In or around November of 2019, Plaintiff Bennett submitted a completed State of New Jersey Application For Permit To Carry A Handgun, form

S. P. 642 (Rev. 03/15) to Defendant Andrew Davis, Chief of Police of the Borough of Clayton Police Department.

29.    Plaintiff Bennett's application included the endorsement of three reputable persons who had known him for at least three years and who certified that he is a person of "good moral character and behavior," in accordance with the statutory requirements, as well as evidence of the certification necessary to demonstrate sufficient familiarity with the safe handling and use of handguns, as further required under state law. N.J.S.A. § 2C:58-4(b); N.J.A.C. §§ 13:54-2.3(a), 13:54-2.4(a).

30.    Plaintiff Bennett also included with his application a statement of "justifiable need."

31.    Plaintiff Bennett is and has been throughout his life a law-abiding, upstanding citizen who positively contributes to his society and who respects the safety and welfare of others in all he does. Indeed, he has not had so much as a parking ticket in over 40 years.

32.    Nevertheless, on or about July 28, 2020, Plaintiff Bennett received notice from the Clayton Police Department that he had been denied a handgun carry permit for lack of "a justifiable need" under the Regulatory Scheme.

33.    Plaintiff Bennett did not request a hearing before the Superior Court because he could not afford the costs and legal fees to do so and he reasonably

believed such an effort would be futile anyway since the Superior Court would hold him to the same "justifiable need" standard, which neither he nor any other ordinary law-abiding citizen can meet.

34.     In fact, an attorney with whom he consulted about the prospect of such an appeal advised Plaintiff Bennett that the process would cost up to $4,000, with very "little chance of success" anyway, given that the statutory definition of "justifiable need" is one that he, like millions of others, cannot meet.

35.     Plaintiff Bennett intends and desires to exercise his right to keep and bear arms by carrying on his person a loaded, operable handgun for lawful purposes, including self-defense, outside his home.

36.     Plaintiff Hucker meets all the general eligibility requirements for lawful and proper handgun possession and use, including those required under New Jersey law for the issuance of a permit to carry a handgun.

37.     In or around October of 2018, Plaintiff Hucker submitted a completed State of New Jersey Application For Permit To Carry A Handgun, form S.P. 642 (Rev. 03/15) to Defendant Juan Barrera, Lieutenant and Chief of Police of the Town of Guttenberg Police Department.

38.     Plaintiff Hucker's application included the endorsement of three reputable persons who had known him for at least three years and who certified that he is a person of "good moral character and behavior," in accordance with the

statutory requirements, as well as evidence of the certification necessary to demonstrate sufficient familiarity with the safe handling and use of handguns, as further required under state law. N.J.S.A. § 2C:58-4(b); N.J.A.C. §§ 13:54-2.3(a), 13:54-2.4(a).

39.     Plaintiff Hucker also included with his application a statement of "Justifiable Reason to Carry Handgun" in an effort to satisfy the statutory "justifiable need" standard. His statement provided as follows:

> There are several justifiable reasons for my request to apply for a permit to carry a handgun;
>
> **Safety:**
> I have a real estate business that often requires me to collect rent in cash and carry cash for certain expenses. This is known by many people and it creates reasonable opportunities for criminals to target me and my wife and children. I also work for a Fortune 100 company and have access to several bank accounts which could reasonably cause me to be a target of kidnapping for extortion or other criminal purposes.
>
> **Sport/hobby:**
> I grew up in the Catskills in New York and have some experience with firearms and would like to explore this more. I want to be able to legally carry a handgun for these purposes.
>
> **Inheritance:**
> My father has a few guns (including handguns) that he'd like to pass onto me through his estate, but I cannot legally accept them until I have the permit. My father lives in New York State and has had a concealed carry permit for most of his adult life due to his military background.
>
> I would like to add that I've been a law abiding citizen for all of my 43 years, having respect for my privilege to drive by keeping

within the speed limit and following the rules of the road. I do my best every day to contribute positively to our society and to raise my children the same. I have shown a high level of personal accountability and responsibility in my entire adult life and am looking forward to this process. One of my references ([redacted]) is a New York State trooper who mentioned he would gladly vouch for me. I'm determined to legally exercise my 2nd amendment rights for the reasons listed above. Thank you in advance for your time and consideration.

Sincerely,
Michael Hucker

40.    On or about February 9, 2019, Plaintiff Hucker received a letter signed by Sergeant R. Martinez on behalf of Defendant Barrera of the Town of Guttenberg Police Department. The letter was titled, "Carry Permit Denial," and stated in pertinent part as follows: "The purpose of this letter is to advise you that the administrative investigation of your request to obtain a permit to carry a handgun is complete. After submitting your file to my commanding officer, Lt. Berrera for review your request has been denied for a 'Lack of Justifiable Need.'" *Id.*

41.    Plaintiff Hucker did not request a hearing before the Superior Court because he lacked the funds necessary to retain legal counsel, and he reasonably believed such an effort would be futile anyway since the Superior Court would hold him to the same "justifiable need" standard, which neither he nor any other ordinary law-abiding citizen can meet.

42.    Plaintiff Hucker intends and desires to exercise his right to keep and bear arms by carrying on his person a loaded, operable handgun for lawful purposes,

including self-defense, outside his home.

43.     Plaintiffs FPC, SAF, and NJ2AS have members and supporters in New Jersey who intend and desire to exercise their right to keep and bear arms by carrying on their person a loaded, operable handgun for lawful purposes, including self-defense, outside their homes.

44.     But for New Jersey's unconstitutional Regulatory Scheme, the Defendants' enforcement thereof, and the severe lifelong and criminal penalties associated with violations of the Regulatory Scheme, Plaintiffs Bennett and Hucker, Plaintiffs FPC, SAF, and NJ2AS's members and supporters, and other similarly situated individuals in New Jersey would exercise their right to keep and bear arms by carrying on their person a loaded, operable handgun for lawful purposes, including self-defense, outside their homes, without the fear or risk of arrest and prosecution, and the loss of their right to keep and bear arms for engaging in constitutionally protected lawful conduct.

## NEW JERSEY'S UNCONSTITUTIONAL REGULATORY SCHEME

45.     In the State of New Jersey, any ordinary citizen who knowingly has in his or her possession any handgun without first having obtained a permit to carry the same is guilty of a crime in the second degree.[2] N.J.S.A. § 2C:39-5(b).

---

[2] If the propelling force of the handgun is compressed gas, vapor, or air (e.g., a pellet or BB gun), the crime is in the third degree. N.J.S.A. § 2C:39-5(b)(2).

46.     This general prohibition against carrying a handgun without a permit applies to everyone except those who fall within one of the specifically exempted categories of people, primarily on-duty military personnel, law enforcement officers, and some other government officials. *See* N.J.S.A. § 2C:39-6(a)-(c), (*l*).

47.     Ordinary citizens, who do not have a carry permit, can only possess handguns in their homes or places of business, or while traveling to and from target practicing and then only *when the handgun is both unloaded and locked in a container throughout the entire transit*. N.J.S.A. § 2C:39-6(f)-(g).

48.     Travel while in possession of handguns to and from target practicing, when the handgun is both unloaded and locked in a container throughout the entire transit, does not allow normal, everyday citizens to carry on their person loaded, operable handguns in public for lawful purposes including self-defense, and accordingly does not satisfy the right to bear arms.

49.     For the average citizen to qualify for a carry permit, in addition to being free of any history of crime, mental health problems, or drug abuse, etc. N.J.S.A. §§ 2C:58-3(c), 2C:58-4(c); N.J.A.C. §§ 13:54-2.3(a), 13:54-2.4(a)-(d), he or she must satisfy several other criteria, including: 1) having three other people attest to the applicant's "good moral character and behavior," N.J.S.A. § 2C:58-4(b); N.J.A.C. §§ 13:54-2.3(a), 13:54-2.4(a); 2) demonstrating "thorough familiarity with the safe handling and use of handguns" through specified forms of certification, N.J.S.A. §

2C:58-4(c); N.J.A.C. § 13:54-2.4(b); and, 3) providing "a written certification of justifiable need to carry a handgun," N.J.S.A. § 2C:58-4(c); N.J.A.C. §§ 13:54-2.3(a), 13:54-2.4(d)(1).

50.     The application for a handgun carry permit must be submitted to the chief police officer of the municipality in which the applicant resides or to the Superintendent of the State Police if no local police department exists in the applicant's town of residence. N.J.S.A. § 2C:58-4(c).

51.     Only if it is approved by them, the applicant must then present the approval to the Superior Court of the county in which the applicant resides (or where he or she intends to carry the handgun if the applicant is a nonresident or an employee of an armored car company). N.J.S.A. § 2C:58-4(d).

52.     The Superior Court may issue the permit only if it independently finds all the statutory requirements satisfied based on its own judgment: "The court shall issue the permit to the applicant if, *but only if*, it is satisfied that the applicant is a person of good character who is not subject to any of the disabilities set forth in subsection c. of N.J.S.A. § 2C:58-3, that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun in accordance with the provisions of subsection c. of this section." *Id.* (italics added).

53.     A difference of opinion is not only a distinct possibility given the breadth of discretion inherent in the Regulatory Scheme, it actually happens. *See*

*e.g.*, *In re Calstrom*, 240 N.J. 563, 564 (2020) ("The Roselle Park Police Department approved petitioner Calvin Carlstrom's application to carry a handgun in his capacity as a security guard for AMC Movie Theaters, but the Superior Court, Law Division then denied his application without a hearing.").

54.    If the Chief of Police or the Superintendent deny an application, then the applicant may request a hearing before the Superior Court within the 30 days of the denial. N.J.S.A. § 2C:58-4(e).

55.    A hearing shall be held within 30 days of such a request, and "the determination at the hearing shall be in accordance with law and rules governing the courts of this State." *Id.*

56.    If the application is initially approved by the Chief of Police or the Superintendent, but the Superior Court refuses to issue a permit based on its own findings, "the applicant may appeal the denial in accordance with law and rules governing the courts of this State." *Id.*

57.    The "law and rules" governing the approval and denial of such applications at each stage of the process—from the initial determination and up through any determination on appeal—necessarily include the fundamental condition that the applicant prove a "justifiable need" within the meaning of state law, failing which the application must be denied. As defined within the statutory scheme, "a justifiable need" can only be established, and therefore a carry permit

may only be issued, under a very restrictive set of circumstances.

58.     To meet the State's "justifiable need" standard, all private citizens like Plaintiffs Bennett and Hucker must "specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun." N.J.A.C. § 13:54-2.4(d)(1).

59.     Additionally, "[w]here possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies." *Id.*[3]

60.     Thus, even if the applicant can satisfactorily prove he or she faces such a "special danger," so long the police chief and/or the Superior Court surmises the existence of *any* other means by which the applicant *could* avoid that danger (e.g., hiring a security detail, relying on a 9-1-1 call to dispatch an instantaneous rescue, or simply trying to elude the attacker in some way), the application can—and

---

[3] This Regulatory Scheme even demands that private detective agencies, armored car companies, and private security companies, whose "statutorily authorized duties" subject them to "a substantial threat of serious bodily harm" must bear the additional burden of proving that carrying a handgun "is necessary to reduce the threat of unjustifiable serious bodily harm to any person." N.J.A.C. § 13:54-2.4(d)(2).

presumably *must*—be denied.[4]

61.     This justifiable need condition is as onerous and strictly applied as it sounds: "Regardless of training and absence of a disqualifying condition, a well-trained and wholly law-abiding and responsible person cannot lawfully carry a firearm in a public place unless that person can demonstrate that he or she has 'a justifiable need to carry a handgun.'" *In re Wheeler*, 433 N.J. Super. 560, 579 (App. Div. 2013) (quoting N.J.S.A. § 2C:58–4(d)).

62.     And this standard ultimately means no permit will issue unless the applicant has "a reason—one based on more than a generalized concern about the prevalence of crime—to anticipate a violent attack in a public place warranting lawful defensive use of a handgun," *id.* at 579, backed up by "evidence of specific threats or previous attacks" demonstrating he or she faces a "special danger" absent the carry permit, N.J.S.A. § 2C:58-4(c). This has been the settled law in New Jersey since at least 1971. At that time, the statutory scheme said nothing more than that the applicant was required to demonstrate a "need" for the carry permit, with no definition of "need."

---

[4] Perhaps hiring a security detail to deal with the dangers of regularly traversing high-crime areas would be affordable to a business owner whose revenue exceeds $12 million a year, *see In re Pantano*, 429 N.J. Super. 478, 484 (App. Div. 2013) (refusing to disturb the denial of Pantano's carry permit application because he "presented no evidence that his business, which grossed over $12 million a year, could not reasonably afford protective service"), but such measures are far out of reach for the ordinary citizen.

63.    Yet, the New Jersey Supreme Court strictly construed this "need" requirement even then, saying the requirement "wisely confines the issuance of carrying permits" to those "who can establish an urgent necessity for carrying guns for self-protection. One whose life is in real danger, as evidenced by serious threats or earlier attacks, may perhaps qualify within the latter category but one whose concern is with the safety of his property, protectible by other means, clearly may not so qualify." *Siccardi v. State*, 59 N.J. 545, 557 (1971); *accord In re Preis*, 118 N.J. 564, 572 (1990).

64.    Thus, under New Jersey's Regulatory Scheme, to determine whether someone should be entitled to armed self-defense, the government must weigh whether: (1) self-protection is necessary; (2) the need is urgent; (3) the danger is special; and (4) no alternative exists to armed defense. And what is more, "Upon receiving the approval of the chief of police or superintendent . . . the application is then presented to a judge of the Superior Court . . . who 'shall issue' the permit after being satisfied that the applicant is qualified and has established a 'justifiable need' for carrying a handgun." *In re Cheeseman*, No. A-2412-17T2, at *1.

65.    Under this Regulatory Scheme, both law enforcement and a judge are granted "the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634.

66.    Moreover, even if an applicant does satisfy these criteria, the permit can

*still* be denied on the basis of anything else leading the police chief in the first instance, or the Superior Court on review, to conclude that "issuance would not be in the interest of the public health, safety or welfare," N.J.S.A §§ 2C:58-3(c)(5), 2C:58-4(c), a plainly subjective standard.

67.     And even if obtained, because a carry permit is only good for two years, it must "be renewed . . . in the same manner and subject to the identical procedures by which the original permit was obtained." N.J.S.A. § 2C:58-4(a); *see also* N.J.A.C. § 13:54-2.9(a)-(b). Even in the case where an applicant successfully clears *all* of the legal hurdles, the permit will expire after two years. N.J.S.A. § 2C:58-4(a). The Sisyphean Rock that is the Regulatory Scheme will roll back down the mountain, and the applicant must once again set his or her shoulder to the boulder, all so that the State might—*if* it and its agents are so inclined—grant the applicant the right once again to bear arms.

68.     On information and belief, due to the onerous nature of Defendants' Regulatory Scheme, only a tiny fraction of a percent of New Jersey citizens are able to obtain permits to carry handguns, and indeed, most people simply never apply at all because it is well known throughout the State that the "justifiable need" standard effectively renders the process an exercise in futility for all ordinary law-abiding citizens, thus further chilling and denying exercise of the right.

69.     Coupled with the requirements that the applicant must persuade three

people to attest to his "good moral character and behavior", whatever that unconstrained and undefined term might mean, on a form filed with and investigated by law enforcement agencies, N.J.S.A. § 2C:58-4(b), and that an otherwise completely satisfactory application can be denied for any reason deemed somehow contrary to the interest of the public health, safety, or welfare, N.J.S.A. §§ 2C:58-3(c)(5), 2C:58-4(c), the Regulatory Scheme grants Defendants essentially unbridled discretion to deny ordinary law-abiding citizens their right to carry a loaded, operable handgun in public.

70.     The Regulatory Scheme violates the constitutional rights of all such citizens, including Plaintiffs Bennett and Hucker, the rights of all similarly situated members and supporters of Plaintiffs FPC, SAF, and NJ2AS, and the rights of all other similarly situated individuals, under the Second and Fourteenth Amendments to the United States Constitution.

## THE CONTROLLING CONSTITUTIONAL TEXT, AND THE HISTORY AND TRADITION THAT INFORMS IT

71.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

72.     The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of

life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

73.    The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

74.    "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634  (2008).

75.    "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634-35.

76.    In *Heller*, the Supreme Court also held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592.

77.    This is "'a natural right which the people have reserved to themselves, confirmed by the Bill of Rights,'" *Heller*, 554 U.S. at 594 (quoting A Journal of the Times: Mar. 17, New York Journal, Supp. 1, Apr. 13, 1769).

78.    And the meaning of the right during the founding-era—which the Supreme Court has commanded must still control today—"unambiguously"

"refer[red] to the carrying of weapons outside of an organized militia." *Id.* at 584. It is clear that, "[a]t the time of the founding, as now, to 'bear' meant to "carry." *Id.*

79.    *Heller* commands that the fundamental right to *bear* arms for self-defense—as part and parcel of "the natural right of resistance and self-preservation," *Heller*, 554 U.S. at 594—is of particular importance when it comes to ensuring citizens' ability to carry *handguns* for such purposes, because the court explicitly recognized the handgun as "the quintessential self-defense weapon" in this country, and that any prohibition against their carry and use by law-abiding persons is necessarily invalid. *Id.* at 629.

80.    Assuming applicants are not disqualified from exercising Second Amendment rights, the State must permit them to carry their loaded handguns in public in exercise of their right to bear arms.

81.    Consequently, this right to carry firearms, and particularly handguns, guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prevent them from exercising that right, such as those "permitting" or "licensing" programs under which state authorities condition the exercise of this right based on subjective individual judgments of whether and the extent to which its exercise is in the interests of the public welfare, untethered to constitutional requirements and principles.

82.    Such regulatory schemes necessarily cannot operate to prohibit

ordinary law-abiding citizens from carrying their handguns in public, and also prevent them from obtaining the "permit" necessary under state law to lawfully exercise the fundamental right to carry on their person loaded, operable handguns in public for self-defense—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

83.    The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Heller*, 554 U.S. at 636.

84.    Yet, this is precisely how the Regulatory Scheme in New Jersey operates, completely shutting out ordinary law-abiding citizens from exercising their rights in the State.

85.    The unconstitutional Regulatory Scheme starts out by making it a crime to carry a loaded, operable handgun virtually anywhere outside a person's home or place of business, without first applying for and obtaining a permit to do so. Violators are subject to imprisonment for five to ten years and up to a $150,000 fine. N.J.S.A. §§ 2C:43-3(a)(2), 2C:43-6(a)(2).

86.    The Regulatory Scheme creates only a very narrow set of exceptions from this general criminal liability, reserved for specifically defined classes of individuals with special credentials or qualifications.

87.    Because the ordinary law-abiding citizen does not fall within any of

these special classes, obtaining a carry permit the only way they can exercise the constitutionally guaranteed carry rights without being subjected to criminal sanction under the general prohibition.

88.    And then, the ordinary citizen who attempts to embark on the onerous carry permit process is cut off at the pass by the State's "justifiable need" standard, which is inherently designed to exclude any applicant who seeks a permit for the general purpose of exercising the fundamental right to keep and bear arms, as they are *guaranteed* by the Second Amendment.

89.    In fact, the standard is so onerous that is essentially designed to exclude anyone and everyone who cannot demonstrate a standard for the carry permit that is impossible to meet for the average citizen, based on demonstrable history and continuing existence of threats of great bodily injury or death.

90.    More than that, even if an applicant *might* somehow surmount this hurdle, their application will still be denied if the applicant fails to obtain and provide signed affirmations of three people attesting to his or her "good moral character and behavior," whatever that might mean.

91.    And that's not all. Under the Regulatory Scheme, the government retains unbridled discretion to deny an otherwise completely satisfactory application if, for any reason, the decision-making authorities conclude that issuing a permit "would not be in the interest of the public health, safety or welfare."

92.     *Heller* mandates that the constitutionality of restrictions on the rights enshrined in the Second Amendment must be scrutinized under the text of the Constitution itself, looking to history and tradition to inform its original public meaning.

93.     The Supreme Court has directed the analysis be "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731). And the Court looks to "the historical background of the Second Amendment" because "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 592.

94.     No laws requiring government permission for American citizens to carry a firearm existed before the twentieth century—including at the time of the ratification of the Second Amendment in 1791.

95.     And indeed, the earliest laws that precluded the keeping and bearing of arms were indisputably unconstitutional, as they were the product of racist views long since abandoned as antithetical to the core purposes of the rights guaranteed all citizens under the Constitution.

96.     As the high court declared in *Brown v. Board of Ed.,* 347 U.S. 483, 491

n. 5 (1954) (quoting *In re Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 67-72

(1873)):

> [The Fourteenth Amendment] 'ordains that no State shall deprive
> any person of life, liberty, or property, without due process of
> law, or deny to any person within its jurisdiction the equal
> protection of the laws. What is this but declaring that the law in
> the States shall be the same for the black as for the white; that all
> persons, whether colored or white, shall stand equal before the
> laws of the States, and, in regard to the colored race, for whose
> protection the amendment was primarily designed, that no
> discrimination shall be made against them by law because of
> their color? The words of the amendment, it is true, are
> prohibitory, but they contain a necessary implication of a positive
> immunity, or right, most valuable to the colored race,—the right
> to exemption from unfriendly legislation against them
> distinctively as colored,—exemption from legal discriminations,
> implying inferiority in civil society, lessening the security of
> their enjoyment of the rights which others enjoy, and
> discriminations which are steps towards reducing them to the
> condition of a subject race.'

97.    When the Supreme Court of North Carolina upheld the "Act to prevent

Free Persons of Colour from carrying Fire-arms" in 1844, its opinion was based on

the now clearly untenable rationale that "Free people of color in this State are not to

be considered as citizens, in the largest sense of the term, or, if they are, they occupy

such a position in society, as justifies the legislature in adopting a course of policy

in its acts peculiar to them—so that they do not violate those great principles of

justice, which lie at the foundation of all laws." *State v. Newsom*, 27 N.C. 250, 250

(1844).

98.    New Jersey's Regulatory Scheme is more burdensome to the Second

Amendment right to bear arms than any historical law that has ever been applied to any person recognized as having full citizenship rights.

//

//

## THE STATE'S IMPERMISSIBLE INFRINGEMENT OF THE FUNDAMENTAL, INDIVIDUAL RIGHT TO BEAR ARMS

99.    As detailed above, nothing in the text itself, nor in the applicable history or tradition, of the Second Amendment supports the restrictions and burdens that the Regulatory Scheme imposes on law-abiding citizens, like Plaintiffs, and their right to  lawfully and peaceably carry loaded handguns for all lawful purposes, including self-defense, in the exercise of their fundamental right to bear arms.

100.   Indeed, nothing in that historical background even justifies the *preliminary* requirement that ordinary law-abiding citizens must obtain a permit—through an already onerous scheme that tests their "good character and good repute in the community"—before they can even *purchase or acquire* a handgun in the first place. *See* N.J.A.C. § 13:54-1.3(b)-(c); N.J.S.A. § 2C:58-3(c).[5]

101.   It makes a mockery of the fundamental right to keep and bear arms under the Second Amendment to require that ordinary citizens apply for a permission

---

[5] While Plaintiffs maintain that the firearm purchase permitting scheme is constitutionally infirm for many of the same reasons as the handgun permitting scheme, this action focuses on the constitutional infirmity of the latter scheme.

slip from State agents to carry the handgun which they already had to jump through hoops to acquire, and then to grant those same State agents essentially unimpeachable discretion to deny that permission whenever they find, in their subjective judgment, an insufficient "justifiable need," that the applicant has not proven "good moral character and behavior," or that issuing the permit is otherwise contrary to some "interest of the public health, safety and welfare."

102.   The Regulatory Scheme flips on their head the constitutionally guaranteed exercise of rights and the presumption of liberty secured by the Second Amendment, in banning otherwise eligible, law-abiding citizens from freely carrying loaded handguns in public on pain of criminal liability, and then leaving them with slim chances of ever lawfully exercising this right under the oppressive Regulatory Scheme.

103.   And the Regulatory Scheme leaves ordinary citizens with no realistic opportunity at all because they cannot prove that they have, at the time of their application, "an urgent necessity . . . for self-protection based on specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means." *In re Wheeler*, 433 N.J. Super. at 571-72.

104.   The Regulatory Scheme's handgun carry permit application and issuance requirements, process, and standards are the very definition of unconstitutional, loaded with built-in arbitrary and capricious terms and

opportunities for the exercise of unbridled subjective discretion all along the path of its burdensome journey to a virtually certain denial.

105.   Plaintiffs Bennett and Hucker are ordinary law-abiding citizens who meet all the general eligibility requirements for a handgun carry permit—with clean criminal records; no mental, physical, or legal disabilities concerning their right or ability to lawfully possess and use handguns; no associations with any subversive groups; having the endorsement of three individuals attesting to their "good moral character and behavior;" and demonstrated sufficient familiarity with the safe use and handling of firearms.

106.   Plaintiffs Bennett and Hucker completed and submitted to the police chief in their respective townships the standard application for requesting the issuance of a handgun carry permit, which included all the required certifications, attestations, and other required documentation, as well as a supporting statement of "justifiable need."

107.   Nevertheless, Plaintiffs Bennett and Hucker were denied a carry permit for lack of a "justifiable need."

108.   The very design of the Regulatory Scheme forces this result for ordinary law-abiding applicants like Plaintiffs Bennett and Hucker who seek to carry a handgun in the exercise of their constitutional right to self-defense.

109.   Plaintiffs' assertions in support of their applications—even Plaintiff

Hucker's express appeal for recognition as the law-abiding citizen he is, in doing his "best every day to contribute positively to our society and to raise [his] children the same," and having "shown a high level of personal accountability and responsibility in [his] entire adult life"—are necessarily insufficient as a matter of law in New Jersey.

110.   Plaintiffs cannot—and, under the Constitution, cannot be required to—show they have "an *urgent* necessity ... for self-protection based on *specific threats or previous attacks* demonstrating a special danger to the applicant's life that cannot be avoided by other means," *In re Wheeler*, 433 N.J. Super. at 571-72 (italics added)—much less *prove* with "reports of such incidents to the appropriate law enforcement agencies" that they are persistently or repeatedly experiencing such acute dangers. N.J.A.C. § 13:54-2.4(d)(1).

111.   The Regulatory Scheme demands proof that an applicant for a carry permit: 1) has already been confronted with a real threat of serious or deadly force, and 2) after that confrontation—if they survive it—continues to live under a persistent threat of immediate death or great bodily injury, and 3) the only conceivable means of combatting the threat is the carrying of a handgun. Only the survivors of real threats and injuries can hope to obtain a carry permit—and only after that additional time and carry permit process has elapsed could they hope to defend their lives with their handgun.

-34-

112.   When seconds count, the police are minute or hours away, if they come at all—and the Regulatory Scheme, and the Defendants' enforcement of it, disarms and leaves effectively defenseless the very same people the Constitution guarantees the right to keep and bear arms for self-defense.

113.   And certainly no one could obtain a carry permit with the supporting justification that they wish to carry a handgun in the lawful exercise of the constitutional right to self-defense while in the public domain. Although this is the only justification that should and *constitutionally can* be required, their applications are all doomed to fail under the Regulatory Scheme.

114.   Because a person's ability to acquire carry permit is the sole means of carrying a handgun in public in the exercise of their constitutional rights without facing criminal liability, prosecution, imprisonment, and the loss of rights *as a consequence of exercising their rights*, the constitutional injury is complete even before their applications are denied; the standard itself has cut them off at the pass, precluding any possibility of their ever being granted the permit for so long as this standard is in effect.

115.   Indeed, this not only renders any further hearings or appeals from a denial following a hearing an exercise in futility, but it also means that all ordinary law-abiding citizens disqualified under the Regulatory Scheme because they cannot show a sufficient "justifiable need" stand constitutionally aggrieved regardless of

whether they have even applied, because to carry without a permit would violate the Regulatory Scheme's criminal provisions.

116.   As such, the Regulatory Scheme represents a continuing threat and infringement upon the fundamental constitutional rights of Plaintiffs Bennett and Hucker, and a continuing threat and infringement upon the fundamental constitutional rights of the similarly situated members and supporters of Plaintiffs FPC, SAF, and NJ2AS, and all similarly situated individuals, including all those individuals otherwise qualified to obtain a handgun carry permit but who have elected not to submit an application under the prevailing "justifiable need" and other unconstitutional subjective standards in recognition of the reality that doing so would be a wasteful and futile effort.

117.   The application process in fact comes at a real cost—not only must the applicant gather and provide substantial information and documentation, including information of a highly personal nature, but the applicant must enlist three other people to attest to his or her "good moral character and behavior," pay a $50 fee, jump through many hoops, and wait weeks or months before they have their answer—an answer that, under the Regulatory Scheme, is almost certainly a denial of the right to carry.

118.   The costly and insurmountable conditions of the Regulatory Scheme's carry permit process and requirements have and continue to chill the exercise of the

rights at stake from the very start of the onerous process, shunning law-abiding citizens before they have even attempted to apply.

119.   The Regulatory Scheme's carry permit requirements that all ordinary citizens "prove" their "good moral character and behavior" with the testimony of three other people heightens the chilling effect of the Regulatory Scheme. Many people who know the applicant well, are fully confident that he or she is a trustworthy law-abiding person, and who would otherwise happily opine the applicant is of "good moral character and behavior" in any other context, may be hesitant to get directly involved in a firearms permitting scheme by ascribing their names on a form that will be scrutinized by government officials—especially given the public knowledge that these officials investigate such statements, sometimes with psychologically imposing face-to-face encounters with armed police, and almost invariably reject the applicants.

120.   Certainly, an applicant's "good moral character and behavior"— whatever that means—cannot fairly be impugned by his or her failure to procure such attestations, much less the failure to convince *three* individuals to voluntarily engage in such a process with law enforcement. Yet, that's one more unreasonable and unduly burdensome condition being imposed on the citizens' fundamental constitutional right to bear arms.

121.   The already unconstitutional restrictions and burdens imposed by the

Regulatory Scheme are especially onerous now in light of the current public health crisis and the associated psychological and economic pressures increasing the potential of crime and civil unrest. Since the onset of the COVID-19 pandemic, violent crime and murders have increased in many metropolitan areas, including in New Jersey.[6]

122.  Plaintiffs Bennett and Hucker are accordingly even more concerned about their safety and the safety of their family, and they more than ever seek and desire to lawfully exercise their right to bear arms by carrying a loaded, operable handgun—"the quintessential self-defense weapon" in the United States—for lawful purposes including self-defense while outside the limited confines of their homes.

123.  Plaintiffs Bennett and Hucker, who possess all of the qualifications necessary to obtain a handgun carry permit, and similarly situated members and supporters of Plaintiffs FPC, SAF, and NJ2AS, intend to exercise their right to bear arms in the State of New Jersey by carrying a loaded, operable handgun in public, which would currently violate the State's unconstitutional Regulatory Scheme.

124.  On information and belief, Defendants individually and collectively

---

[6] See, for instance: "Increase in gun violence seen throughout New Jersey" https://www.njspotlight.com/news/video/increase-in-gun-violence-seen-throughout-new-jersey/ (last accessed November 1, 2020) and "Gun violence fuels murder rise in some cities even with coronavirus lockdowns" https://www.foxnews.com/us/gun-violence-fuel-murder-rise-in-some-cities-even-in-the-middle-of-coronavirus-pandemic (last accessed November 1, 2020).

enforce the Regulatory Scheme.

125.   The Regulatory Scheme, and Defendants' enforcement thereof, causes Plaintiffs and others like them to have a reasonable fear and creates an imminent risk of arrest and criminal prosecution for carrying a handgun in violation of the Regulatory Scheme, and subjects them to criminal penalties, prosecution, prison, and the lifetime loss of their right to keep and bear arms.

126.   Plaintiffs Bennett and Hucker, and similarly situated members and supporters of Plaintiffs FPC, SAF, and NJ2AS, and similarly situated members of the public, would exercise their right to bear arms by carrying a loaded, operable handgun—"the quintessential self-defense weapon" in the United States—for lawful purposes including self-defense while outside the limited confines of their homes but for the Regulatory Scheme and Defendants' enforcement thereof.

127.   Defendants are individually and collectively responsible for this deprivation of constitutional rights, acting under color of State law at all relevant times.

128.   Defendant Grewal enforces, oversees, directs, and implements the Regulatory Scheme in his capacity as Attorney General. He is therefore responsible for administering and executing the laws and regulations underlying the Regulatory Scheme, which govern the carrying of firearms in public and which impose criminal sanctions for violations of that scheme, including the sanctions for carrying a

handgun without first obtaining the permit necessary to avoid criminal liability.

129.   Under the general supervision and oversight of Defendant Grewal, Callahan in turn enforces, oversees, directs, and/or implements the Regulatory Scheme in his capacity as Superintendent of the State Police. His State Police has issued regulations further implementing the statutory requirements governing Handgun Carry Permits. N.J.A.C. § 13:54- 2.1, *et seq*. Those regulations provide that "in the case of a private citizen," the "justifiable need" requirement is satisfied only if the applicant can "specify in detail the urgent necessity for self protection, as evidenced by serious threats, specific threats, or previous attacks, which demonstrate a special danger to the applicant's life that cannot be avoided by reasonable means other than by issuance of a permit to carry a handgun." *Id*. § 13:54-2.4(d)(1). Those regulations further provide that "[w]here possible the applicant shall corroborate the existence of any specific threats or previous attacks by reference to reports of such incidents to the appropriate law enforcement agencies . . . ." *Id*. He is therefore responsible for administering and executing the laws and regulations underlying the Regulatory Scheme, which govern the carrying of firearms in public and impose criminal sanctions for violations of that scheme, including the sanctions for carrying a handgun without first obtaining the permit necessary to avoid criminal liability. He is also responsible for directly administering and rendering determinations on the handgun carry permit applications of those who must or choose to apply to him.

130.   Defendants Barrera, White, and Davis enforce, oversee, direct, and/or implement the Regulatory Scheme in their actual or acting capacities. They are therefore responsible for administering and executing the laws and regulations underlying the Regulatory Scheme, which govern the carrying of firearms in public and impose criminal sanctions for violations of that scheme, including the sanctions for carrying a handgun without first obtaining the permit necessary to avoid criminal liability. They are also responsible for directly administering and rendering determinations on the applications of the residents in their respective municipalities seeking handgun carry permits, including the enforcement and implementation of the "justifiable need" requirement, and have and continue to deny applicants who cannot meet the Regulatory Scheme's unconstitutional standards and requirements. In so doing, Defendants Barrera, White, and Davis are enforcing, implementing, promoting, and propagating the laws and related regulations, policies, or customs which are the direct and proximate cause of, and the driving force behind, the harm for which Plaintiffs seek redress through this action.

131.   In October 2020, amidst continuing and growing threats of civil unrest, violent protests that turn into riots, and preparation for post-election violence, the People of New Jersey are disarmed and denied their rights under the Regulatory Scheme, forced to live as sitting ducks, without access to their right to bear arms outside of their homes.

132.   Accordingly, the Regulatory Scheme and Defendants' individual and collective enforcement of the same are unconstitutional and violate the right to bear arms for self-defense, and the privileges and immunities of citizenship, of Plaintiffs Bennett and Hucker, the similarly situated members of FPC, SAF, and NJ2AS, and all other similarly situated individuals.

133.   Thus, Plaintiffs pray this Court for the requested relief.

## COUNT ONE

**42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under U.S. CONST. amends. II and XIV**

134.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

135.   There is an actual and present controversy between the parties.

136.   The Second and Fourteenth Amendments to the United States Constitution guarantee adult citizens of states their fundamental right to keep and bear arms, both in the home and in public.

137.   The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, in both protected by the Fourteenth Amendment.

138.   The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire and carry loaded, operable handguns on their person in public for all lawful purposes including self-defense, outside the confines of their

homes, personal vehicles, and places of business.

139.   42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

140.   Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the State of New Jersey, including Plaintiffs Bennett and Hucker's, all similarly situated members and supporters of Plaintiffs FPC, SAF, and NJ2AS, and all other similarly situated individuals, through Defendants' enforcement and implementation of the Regulatory Scheme which has denied, will continue to deny and prevent by criminal sanction, the exercise of the fundamental right to bear arms in public for self-defense unless and until redressed through the relief Plaintiffs seek herein.

141.   For all the reasons asserted herein, Defendants have acted in violation of and continue to act in violation of 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## PRAYER FOR RELIEF

142.   WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.   A declaratory judgment that Plaintiffs Bennett and Hucker, the similarly situated members of Plaintiffs FPC, SAF, and NJ2AS, and all other similarly situated individuals who are not prohibited from acquiring and

possessing firearms under federal and state laws, have a fundamental right to bear arms, including by carrying loaded, operable, handguns, on their person and for all other lawful purposes including self-defense, inside and outside their homes, in public, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

b.       A declaratory judgment that the Regulatory Scheme and all related regulations, policies, and/or customs designed to enforce or implement the same, prevent Plaintiffs Bennett and Hucker, the similarly situated members of Plaintiffs FPC, SAF, and NJ2AS, and all other similarly situated individuals from exercising their fundamental right to bear arms, including loaded, operable, handguns, on their person for self-defense, and for all other lawful purposes, inside and outside their homes, in public, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

c.       A declaratory judgment that requiring an application for a carry permit to be additionally presented to and approved by a judge of the Superior Court where the applicant resides, or to the Superior Court in any county where he intends to carry a handgun, in the case of a nonresident or employee of an armored car company, after it is already approved by the chief police officer or the Superintendent of the State Police, is unconstitutional under the Second and Fourteenth Amendments to the United States Constitution;

-44-

      d.      A declaratory judgment that the State's requirement of "written certification of justifiable need" is unconstitutional under the Second and Fourteenth Amendments to the United States Constitution, or alternatively, is unconstitutional to the extent it requires people to state, declare or otherwise show an urgent necessity (or any sort of special or heightened necessity) beyond their desire to exercise their right to armed self-defense;

      e.      A preliminary and permanent injunction prohibiting each Defendant, and each Defendant's respective employees, officers, agents, representatives, and all those acting in concert or participation with him or her, and all those who have notice of the injunction, from enforcing the Regulatory Scheme and all related regulations, policies, and/or customs designed to enforce or implement the same, against Plaintiffs Bennett and Hucker, the similarly situated members of Plaintiffs FPC, SAF, and NJ2AS, and all other similarly situated individuals not otherwise prohibited from acquiring and possessing firearms under federal and state laws, and thus allow them to exercise their fundamental right to keep and bear arms, including loaded, operable handguns, on their person for all lawful purposes, including self-defense, inside and outside their homes, in public, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

      f.      An order requiring Defendants and their respective employees,

officers, and agents, and all those with such powers delegated to them, and all who have notice of the order, to issue a handgun carry permit to Plaintiffs Bennett and Hucker, to similarly situated members of Plaintiffs FPC, SAF, and NJ2AS, and to other individuals upon application as long as they are not subject to any of the disabilities set forth in subsection c. of N.J.S.A. § 2C:58-3 and applicable federal laws, and attest or otherwise show familiarity in the safe handling and use of handguns, including at the time of application.

g.      Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

h.      Any and all other and further legal and equitable relief, including injunctive relief, against Defendants and any others who may be subjected to the Court's jurisdiction, as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: November 1, 2020                    Respectfully submitted,

/s/ David D. Jensen
David D. Jensen
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
Fax: 914.591.1318
david@djensenpllc.com

Raymond M. DiGuiseppe
law.rmd@gmail.com
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705
*Application for Admission Pro Hac Vice*
*Forthcoming*

Adam Kraut, Esq.
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
akraut@fpclaw.org
*Application for Admission Pro Hac Vice*
*Forthcoming*

Attorneys for Plaintiffs