(ORDER LIST: 593 U.S.)

MONDAY, APRIL 26, 2021

CERTIORARI -- SUMMARY DISPOSITION

20-746      SOUTH BAY PENTECOSTAL, ET AL. V. NEWSOM, GOV. OF CA, ET AL.

The petition for a writ of certiorari is granted.  The
judgment is vacated, and the case is remanded to the United
States Court of Appeals for the Ninth Circuit for further
consideration in light of *Tandon* v. *Newsom*, 593 U. S. ___ (2021)
(*per curiam*).

ORDERS IN PENDING CASES

20A150      TEXAS, ET AL. V. COOK COUNTY, IL, ET AL.

In 2019, the Department of Homeland Security promulgated
through notice and comment a rule defining the term "public
charge."  The District Court in this case vacated the rule
nationwide, but that judgment was stayed pending DHS's appeal to
the United States Court of Appeals for the Seventh Circuit.  On
March 9, 2021, following the change in presidential
administration, DHS voluntarily dismissed that appeal, thereby
dissolving the stay of the District Court's judgment.  And on
March 15, DHS relied on the District Court's now-effective
judgment to remove the challenged rule from the Code of Federal
Regulations without going through notice and comment rulemaking.
Shortly after DHS had voluntarily dismissed its appeal, a group
of States sought leave to intervene in the Court of Appeals.
When that request was denied, the States filed an application
for leave to intervene in this Court and for a stay of the

1

District Court's judgment.  The States argue that DHS has prevented enforcement of the rule while insulating the District Court's judgment from review.  The States also contend that DHS has rescinded the rule without following the requirements of the Administrative Procedure Act.  We deny the application, without prejudice to the States raising these and other arguments before the District Court, whether in a motion for intervention or otherwise.  After the District Court considers any such motion, the States may seek review, if necessary, in the Court of Appeals, and in a renewed application in this Court.

20M70    ZEGEYE, ETENAT V. WELLS FARGO BANK, N.A.

The motion to direct the Clerk to file a petition for a writ of certiorari out of time is denied.

20M71    KING, ARNOLD V. KLEM, EDWARD, ET AL.

The motion to direct the Clerk to file a petition for a writ of certiorari out of time is denied.  Justice Alito took no part in the consideration or decision of this motion.

20M72    MT DEPT. OF PUBLIC SERVICE V. MTSUN, LLC

The motion to direct the Clerk to file a petition for a writ of certiorari out of time is denied.

20-429    )    AMERICAN MEDICAL ASSN., ET AL. V. BECERRA, SEC. OF H&HS, ET AL.
          )
20-454    )    BECERRA, SEC. OF H&HS, ET AL. V. MAYOR AND CITY COUNCIL BALTIMORE
          )
20-539    )    OREGON, ET AL. V. BECERRA, SEC. OF H&HS, ET AL.

The Acting Solicitor General is directed to file a letter brief addressing the following question:  Whether the Government intends to continue to enforce the challenged rule and regulations outside the State of Maryland until the completion of notice and comment; and, if further litigation is brought

2

against the challenged rule and regulations outside of Maryland, how the Government would intend to respond.  The brief, not to exceed three pages, is to be filed by Monday, May 3, 2021.  The non-federal parties and the proposed intervenors may submit any responses in letter briefs, not to exceed three pages each, by Monday, May 10, 2021.

20-994    VOLKSWAGEN GROUP, ET AL. V. EPC OF HILLSBOROUGH CTY., ET AL.

The Acting Solicitor General is invited to file a brief in this case expressing the views of the United States.  Justice Breyer took no part in the consideration of this petition.

20-7599   TUCKER, KEVIN L. V. McDONOUGH, SEC. OF VA

The motion of petitioner for leave to proceed *in forma pauperis* is denied.  Petitioner is allowed until May 17, 2021, within which to pay the docketing fee required by Rule 38(a).

## CERTIORARI GRANTED

20-804    HOUSTON COMMUNITY COLLEGE SYSTEM V. WILSON, DAVID B.

20-827    UNITED STATES V. ZUBAYDAH, ABU, ET AL.

The petitions for writs of certiorari are granted.

20-843    NEW YORK STATE RIFLE, ET AL. V. CORLETT, KEITH M., ET AL.

The petition for a writ of certiorari is granted limited to the following question:  Whether the State's denial of petitioners' applications for concealed-carry licenses for self-defense violated the Second Amendment.

## CERTIORARI DENIED

19-1194   KUANG, JIAHAO, ET AL. V. DEPT. OF DEFENSE, ET AL.

20-748    PHI AIR MEDICAL, LLC V. TEXAS MUTUAL INSURANCE, ET AL.

20-819    MAI, DUY T. V. UNITED STATES, ET AL.

20-837    BAKOR, TUA M. L. V. GARLAND, ATT'Y GEN.

20-889      SHERWIN-WILLIAMS CO. V. DELAWARE COUNTY, PA, ET AL.

20-907      SFR INVESTMENTS POOL 1, LLC V. FEDERAL HOME LOAN, ET AL.

20-908      SFR INVESTMENTS POOL 1, LLC V. M&T BANK, ET AL.

20-953      ELLIS, MICHAEL D. V. LIBERTY LIFE ASSURANCE CO.

20-1132     MOORE, DeMICHAEL T., ET AL. V. TENNESSEE

20-1146     SMITH, PAMELA V. PACERMONITOR, LLC, ET AL.

20-1147     SMALLWOOD, THOMAS J. V. LUMPKIN, DIR., TX DCJ

20-1150     HAYNES, SHELBY L., ET AL. V. CENTRAL STATES SOUTHEAST, ET AL.

20-1156     OLEFSKY, ALAN H. V. IL DEPT. OF FINANCIAL, ET AL.

20-1169     HAYNES WILLIAM A., ET AL. V. WORLD WRESTLING ENTERTAINMENT

20-1226     VAUGHN, TRACY W. V. ARKANSAS

20-1264     FUSION IV, INC., ET AL. V. SODERGREN, ANNE

20-1278     JOHNSON, JOHLEN, ET UX. V. JP MORGAN CHASE BANK, N.A.

20-1292     PARTS GALORE L.L.C., ET AL. V. HARRISON, JACQUELINE

20-1296     SKIPPER, WALTER V. A&M DOCKSIDE REPAIR, INC., ET AL.

20-1338     LI, LI V. J.C. PENNEY CO., INC.

20-1341     SMILOWITZ, VOLVY V. UNITED STATES

20-1344     MAEHR, JEFFREY T. V. UNITED STATES

20-1350     GO NEW YORK TOURS, INC. V. GRAY LINE NEW YORK TOURS, ET AL.

20-1361     HEISLER, REGINA B. V. GIROD LOANCO, LLC

20-1366     GOMEZ-ARZATE, JESUS, ET AL. V. UNITED STATES

20-1371     POSEY, BART V. UNITED STATES

20-6359     YBABEN, ANDREW R. V. UNITED STATES

20-6374     BROWN, TERRANCE N. V. UNITED STATES

20-6668     ZAMARRIPA, CHRISTOPHER V. UNITED STATES

20-6756     WALLACE, DAVID R. V. UNITED STATES

20-6799     CHANTHAKOUMMANE, KOSOUL V. TEXAS

20-6876     TOLLETTE, LEON V. FORD, WARDEN

20-7184      WAGNER, MITCHELL V. SCARBOROUGH, ARCHIE D., ET AL.

20-7191      SHULER, CURTIS V. LASSITER, KENNETH E., ET AL.

20-7196      RASNICK, KRISTY R. V. DICKENSON CO. DEPT. SOC. SERV.

20-7212      DAVENPORT, KAREEM V. ILLINOIS

20-7219      WESTBROOK, CEDRIC C. V. CALIFORNIA

20-7222      CORMIER, IAN L. V. RIVERSIDE DIST. ATT'Y, ET AL.

20-7225      RIGSBY, DEREK M. V. COLORADO

20-7227      CONNER, MARCUS V. INDIANA

20-7236      BOYD, VINCENT E. V. RADTKE, WARDEN

20-7239      HOANG, HUNG L. V. MADDEN, WARDEN

20-7245      KERR, JEREMY V. COLLIER, JUDGE

20-7248      PAGE, JONATHAN L. V. INCH, SEC., FL DOC, ET AL.

20-7249      MILES, DERRICK V. ILLINOIS

20-7261      REDMOND, RANDELL J. V. USCA 5

20-7264      SONNENBERG, GRAHAM J. V. LUMPKIN, DIR., TX DCJ

20-7271      BOYCE, RAMON A. V. OHIO

20-7315      OWENS, URSULA V. OHIO

20-7331      MARTIN, KEVIN L. V. VANIHEL, WARDEN

20-7332      LASTER, JUSTIN V. GEORGIA, ET AL.

20-7334      CARR, RAYMOND E. V. SAUL, COMM'R, SOCIAL SEC.

20-7347      TARVER, WARREN V. INCH, SEC., FL DOC

20-7401      BRANDON, RONALD V. FORSHEY, WARDEN

20-7431      WINT, ANTHONY O. V. BRADSHAW, SHERIFF, ET AL.

20-7442      SHALASH, AHMAD V. GRAY, WARDEN

20-7454      MANUEL, DELWYN V. INCH, SEC., FL DOC

20-7492      ROUNDTREE, JUSTICE T. V. UNITED STATES

20-7505      GASKINS, OLIN M. V. WEST VIRGINIA

20-7511      ESPINOZA, CARLOS A. V. MONTGOMERY, ACTING WARDEN

20-7543     REAL-ALOMAR, VICTOR V. UNITED STATES

20-7544     DOMINGUEZ, DEMIAN V. WILLIAMS, BRIAN E., ET AL.

20-7547     MARTINEZ, SALOMAN V. UNITED STATES

20-7548     LUSTER, DAVID A. V. TRATE, WARDEN

20-7554     JORDAN, ERON V. UNITED STATES

20-7563     UDOH, EMEM U. V. DOOLEY, WARDEN

20-7564     UDOH, EMEM U. V. USDC MN

20-7580     GARCIA, TRINIDAD J. V. UNITED STATES

20-7586     BLOUGH, PHILLIP V. UNITED STATES

20-7591     PERALES-PEREZ, HERMINIO V. UNITED STATES

20-7593     CLARKE, FERNANDO V. UNITED STATES

20-7594     WILLIAMS, RASHAWN D. V. UNITED STATES

20-7598     THOMAS, MARCELLUS V. NICKLAUS, WARDEN

20-7608     KAZEEM, EMMANUEL O. V. UNITED STATES

20-7619     POWERS, THOMAS V. SCOTT, GREG

20-7624     MARTIN, JEREMY R. V. UNITED STATES

20-7635     BIRON, LISA V. UNITED STATES

20-7636     BARNES, MARCUS A. V. UNITED STATES

20-7639     HARRIS, JOSEPH A. V. PACHECO, WARDEN

20-7640     GARNER, NICHOLAS C. V. UNITED STATES

20-7652     COLTON, LAWRENCE L. V. TERRIS, WARDEN

        The petitions for writs of certiorari are denied.

20-1137     CALIFORNIA PARENTS, ET AL. V. TORLAKSON, TOM, ET AL.

        The motion of Shree Shakti Mandir of Atlanta, et al. for
leave to file a brief as *amici curiae* is granted.  The petition
for a writ of certiorari is denied.  Justice Breyer took no part
in the consideration or decision of this motion and this
petition.

20-1259      PROTECT OUR PARKS, INC., ET AL. V. CHICAGO, IL, ET AL.

The petition for a writ of certiorari is denied.  Justice Barrett took no part in the consideration or decision of this petition.

20-1352      MILES, ALEXANDER C. V. UNITED STATES

The petition for a writ of certiorari is denied.  Justice Gorsuch took no part in the consideration or decision of this petition.

20-7201      ALFRED, JERRY N. V. INCH, SEC., FL DOC

The motion of petitioner for leave to proceed *in forma pauperis* is denied, and the petition for a writ of certiorari is dismissed.  See Rule 39.8.

20-7233      BUMPHUS, JOHN D. V. UNIQUE PERSONNEL CONS., ET AL.

The petition for a writ of certiorari is denied.  Justice Barrett took no part in the consideration or decision of this petition.

20-7629      MARTIN, ROBERT E. V. UNITED STATES

The petition for a writ of certiorari is denied.  Justice Alito took no part in the consideration or decision of this petition.

**MANDAMUS DENIED**

20-7211      IN RE JEREMY L. DALE

20-7597      IN RE GARY PEEL

20-7603      IN RE BRUCE A. RUTHERFORD

The petitions for writs of mandamus are denied.

20-1145      IN RE LAKSHMI ARUNACHALAM

The petition for a writ of mandamus is denied.  The Chief Justice took no part in the consideration or decision of this

petition.

### REHEARINGS DENIED

20-752      DAVIS, GAVIN B. V. CALIFORNIA

20-756      BAYLOR, CHRISTOPHER G. V. ETO, AYANO

20-766      ARCHER, DAVID V. WINN DIXIE STORES, INC., ET AL.

20-771      DEBERA P. V. ME DEPT. OF HEALTH

20-820      JACKSON, DENISE V. WELLS FARGO HOME MORTGAGE

20-931      HILLIER, WYNSHIP W. V. CIA, ET AL.

20-5764     BERRYMAN, RODNEY V. WONG, WARDEN

20-6041     PERRY, RAYMOND L. V. UNITED STATES

20-6796     SANCHEZ, SIMON A. V. INCH, SEC., FL DOC, ET AL.

20-6801     PALACIO, MAURO C. V. SULLIVAN, B.

20-7292     STASZAK, MATTHEW L. V. UNITED STATES

          The petitions for rehearing are denied.

20-7115     CARTER, CHRISTOPHER A. V. LAWRENCE, WARDEN

          The petition for rehearing is denied.  Justice Barrett took

no part in the consideration or decision of this petition.

Cite as: 593 U. S. ____ (2021)     1

Per Curiam

# SUPREME COURT OF THE UNITED STATES

### ALASKA *v.* SEAN WRIGHT

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 20–940.   Decided April 26, 2021

PER CURIAM.

In 2009, an Alaska jury convicted Sean Wright of 13 counts of sexual abuse of a minor. See *State* v. *Wright*, 404 P. 3d 166, 170 (Alaska 2017). Wright finished serving his sentence in Alaska in 2016, and shortly thereafter he moved to Tennessee. Once there, he failed to register as a sex offender as required by federal law. See Sex Offender Registration and Notification Act, 120 Stat. 591, 593, 34 U. S. C. §§20911, 20913. Wright pleaded guilty to one count of failure to register, see 18 U. S. C. §2250(a), and ultimately received a sentence of time served along with five years of supervised release. See Judgment in *United States* v. *Wright*, No. 1:17–cr–00112, ECF Doc. No. 66 (ED Tenn.).

During the course of those federal proceedings, Wright filed a petition for a writ of habeas corpus in the United States District Court for the District of Alaska pursuant to 28 U. S. C. §§2241 and 2254. He argued that the Alaska Supreme Court had unreasonably applied clearly established federal law when it denied his Sixth Amendment claims and affirmed his 2009 state conviction and sentence. The District Court denied the motion on the threshold ground that Wright was not "in custody pursuant to the judgment of a State court." §2254(a). Noting that a proper motion under §2254(a) requires more than merely being "in custody" *somewhere*, the court reasoned that "the proper procedure for Wright to challenge his current federal custody would be a motion filed in the Eastern District of Tennessee pursuant to 28 U. S. C. §2255." App. to Pet. for Cert. 16a.

Per Curiam

The Court of Appeals reversed. In its view, Wright's state conviction was "'a necessary predicate'" to his federal conviction, 819 Fed. Appx. 544, 545 (CA9 2020) (quoting *Zichko* v. *Idaho*, 247 F. 3d 1015, 1019 (CA9 2001)), so Wright was in fact in custody pursuant to the judgment of a state court. The panel declined to assess the District Court's view that §2255, rather than §2254, provided the proper route for Wright to challenge his current custody. 819 Fed. Appx., at 546, n. 1. One judge concurred and asserted that §2254 was the proper mechanism "because Wright is not attacking the constitutionality of his federal conviction for failing to register as a sex offender in Tennessee; he is collaterally attacking the constitutionality of his predicate Alaska conviction for sexual abuse of a minor." *Id.,* at 546.

The Court of Appeals clearly erred. Section 2254(a) permits a federal court to entertain an application for a writ of habeas corpus on behalf of a person "in custody pursuant to the judgment of a State court." In *Maleng* v. *Cook*, 490 U. S. 488 (1989) (*per curiam*), we held that a habeas petitioner does not remain "in custody" under a conviction "after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." *Id.,* at 492; see also *id.,* at 490 (noting the "in custody" requirement appears in both §§2241(c)(3) and 2254(a)). It made no difference, we said, that the possibility of a prior-conviction enhancement had materialized for the habeas petitioner in that case: "When the second sentence is imposed, it is pursuant to the second conviction that the petitioner is incarcerated and is therefore 'in custody.'" *Id.,* at 492–493.

That Wright's state conviction served as a predicate for his federal conviction thus did not render him "in custody pursuant to the judgment of a State court" under §2254(a). If Wright's second conviction had been for a state crime, he independently could have satisfied §2254(a)'s "in custody"

Per Curiam

requirement, see *Lackawanna County District Attorney* v. *Coss*, 532 U. S. 394, 401–402 (2001), though his ability to attack the first conviction by that means would have been limited, see *id.,* at 402–404.   Wright could not satisfy §2254(a) on that independent basis for the simple reason that his second judgment was entered by a federal court.

*     *     *

We express no view on the other theories Wright advanced before the District Court for meeting the requirements of §2254(a).  We grant the petition for a writ of certiorari, vacate the judgment of the United States Court of Appeals for the Ninth Circuit, and remand the case to that court for further proceedings consistent with this opinion.

*It is so ordered.*

Cite as: 593 U. S. ____ (2021)          1

ALITO, J., dissenting

# SUPREME COURT OF THE UNITED STATES

## TEXAS *v.* CALIFORNIA

ON MOTION FOR LEAVE TO FILE A BILL OF COMPLAINT

No. 153, Orig.   Decided April 26, 2021

The motion for leave to file a bill of complaint is denied.

JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting from denial of motion for leave to file complaint.

Suppose the following occurred.  A Texan and a Californian are involved in a traffic accident in California.  The Texan tries to sue the Californian in federal district court and invokes the "diversity" jurisdiction conferred by 28 U. S. C. §1332(a)(1), which provides that "[t]he district courts shall have original jurisdiction of all civil actions . . . between . . . citizens of different States" where the amount in controversy exceeds $75,000.  Suppose the district court refuses to allow the filing of the complaint and explains: "I know that the Constitution and a federal statute give me jurisdiction over diversity cases, and I know that the Framers of the Constitution and the Congress that enacted the statute thought that diversity jurisdiction was important because it provides a neutral forum for out-of-state parties.  But in my opinion, that's not really so important anymore, and if I have to handle diversity suits, I won't have the time I need to deal with more important matters.  Therefore, in the exercise of my discretion, I am ordering that the complaint not be accepted for filing."  Suppose a court of appeals affirmed this decision and the case came before us.  What would we do?

We would reverse in the blink of an eye.  We might also wag a finger at the lower courts and remind them that a federal court's obligation to hear and decide cases within its jurisdiction is "virtually unflagging."  *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800, 817

ALITO, J., dissenting

(1976); see also, *e.g., Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U. S. 118, 126 (2014); *Sprint Communications, Inc.* v. *Jacobs*, 571 U. S. 69, 77 (2013). We might emphasize that federal courts do not have freewheeling discretion to spurn categories of cases that they don't like.

If this is how we would respond to this imaginary Texan versus Californian tort suit, how can we refuse to allow the filing of the complaint in this case? The State of Texas wishes to sue the State of California and invokes our "original and exclusive jurisdiction of all controversies between two or more States." 28 U. S. C. §1251(a); see also U. S. Const., Art. III, §2, cl. 2. Can we justify our refusal to entertain Texas's suit on essentially the same ground that we would reject out of hand in the hypothetical diversity case just described, that is, on the ground that our original jurisdiction no longer seems as important as it was when the Constitution was adopted, and that a proliferation of original cases would crowd out more important matters on our appellate docket? See *Illinois* v. *Milwaukee*, 406 U. S. 91, 93–94 (1972); *Ohio* v. *Wyandotte Chemicals Corp.*, 401 U. S. 493, 497–499 (1971). It is not easy to see how the refusal to entertain Texas's suit can be justified on that ground—particularly since our rejection of Texas's complaint leaves the State in a more difficult position than our imaginary Texas motorist. That person could at least file suit in a state court, but if our jurisdiction under §1251(a) is truly exclusive, the State is left without *any* judicial forum. Cf. *Franchise Tax Bd. of Cal.* v. *Hyatt*, 587 U. S. ___, ___ (2019) (slip op., at 13) (noting "inability of one State to hale another into its courts without the latter's consent").

In fairness to the Court, what it does in this case—claiming the discretion to refuse to entertain Texas's suit—is consistent with a practice the Court has followed for the past 45 years. But in all that time, the Court has never provided

ALITO, J., dissenting

a convincing justification for the practice.  In *Cohens* v. *Virginia*, 6 Wheat. 264 (1821), Chief Justice Marshall's opinion for the Court famously proclaimed: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  The one or the other would be treason to the constitution."  *Id.,* at 404.

The Court has stepped back a bit from this categorical pronouncement—but only a bit.  See, *e.g.*, *Sprint Communications, Inc.*, 571 U. S., at 77.  The Court has repeatedly stressed that a federal court is *almost always* obligated to entertain a case over which it has jurisdiction.  *Ibid.*  Instances in which this is not required are the rare exception.

The Court's practice regarding original jurisdiction cases, however, has expanded far beyond anything that might be called an exception.  Indeed, commentators have written that the practice has made our original jurisdiction "'almost as discretionary as [our] certiorari jurisdiction over appellate cases.'"  S. Shapiro, K. Geller, T. Bishop, E. Hartnett, & D. Himmelfarb, Supreme Court Practice 639 (10th ed. 2013) (hereinafter Stern & Gressman).

I

How did the Court come to adopt a practice that seems so inconsistent with the principle the *Cohens* Court thought self-evident?  Like many a questionable habit, the practice developed incrementally.  For the first 150 years after the adoption of the Constitution, the Court never refused to permit the filing of a complaint in a case falling within its original jurisdiction.[1]  See Stern & Gressman 634; Stevenson, Exclusive Original Jurisdiction of the United States

──────────

[1] The Court did not accept every case filed during that period, of course—it rejected some for lack of standing and on account of other justiciability defects. See, *e.g., Louisiana* v. *Texas*, 176 U. S. 1, 24 (1900) (Harlan, J., concurring in result) (arguing Article III did not bestow jurisdiction over cases testing the constitutionality of "local statutes or regulations that do not affect the property or the powers of the complaining State in its sovereign or corporate capacity"); see generally Stern &

Supreme Court: Does it Still Exist? 1982 B. Y. U. L. Rev. 727, 729. The first whisper of the notion that the Court might decline to exercise its original jurisdiction appeared in *Louisiana* v. *Texas*, 176 U. S. 1 (1900). There, the Court held that the case did not actually constitute a dispute between two States, but it added that the Court's jurisdiction to hear such suits "is of so delicate and grave a character that it was not contemplated that it would be exercised save when the necessity was absolute." *Id.*, at 15.

Another 39 years would go by before the Court took the next step toward its current practice, and when it took that step, it did so in a roundabout way. In *Massachusetts* v. *Missouri*, 308 U. S. 1 (1939), the dispute concerned the two States' right to impose state inheritance taxes on securities held in trusts that had been created by a Massachusetts decedent but were administered in Missouri by Missouri trustees. Noting that there were ample funds in the trusts to pay the taxes imposed by both States, the Court first held the dispute was not really between two States and that therefore the controversy did not fall within the Court's exclusive original jurisdiction. *Id.,* at 15–17. The Court then turned to Massachusetts's fallback argument that its claim could be understood as one against Missouri citizens and that therefore the claim at least fell within the Court's nonexclusive original jurisdiction over cases between a State and a citizen of another State. The Court expressed doubt that the bill could be read to assert such a claim and only then turned to the question whether the Court would be obligated to entertain the claim if the bill could be interpreted that way. The Court observed that a court is not always required to entertain a suit within its jurisdiction when the suit may be brought in another forum; that the suit at hand was not necessary for Massachusetts's "protection" because Massachusetts could apparently bring its suit in a Missouri

_____

Gressman 622–634.

court; and that entertaining suits like this one would poten-
tially impose an "enormous burden" and "might seriously
interfere with the discharge by th[e] Court of its duty in de-
ciding cases and controversies appropriately brought before
it." *Id.,* at 18–19.

In *Wyandotte Chemicals Corp.*, 401 U. S. 493, the Court
returned to the question of declining to exercise its non-ex-
clusive original jurisdiction.  The Court acknowledged that
"it may initially have been contemplated that this Court
would always exercise its original jurisdiction when
properly called upon to do so." *Id.*, at 497.  But the Court
opined that changes in the American legal system had ren-
dered that view "untenable, as a practical matter." *Ibid.*
"What gives rise to the necessity for recognizing [the] dis-
cretion" to decline to entertain original-jurisdiction cases,
the Court explained, was "pre-eminently the diminished so-
cietal concern in our function as a court of original jurisdic-
tion and the enhanced importance of our role as the final
federal appellate court." *Id.*, at 499.

The next year, the Court said in dicta that it would exer-
cise the same discretion in cases within its exclusive origi-
nal jurisdiction: "We construe 28 U. S. C. §1251(a)(1), as we
do Art. III, §2, cl. 2, to honor our original jurisdiction but to
make it obligatory only in appropriate cases." *Illinois* v.
*Milwaukee*, 406 U. S., at 93.  The Court provided little jus-
tification for this assertion.  In the next sentence, the Court
noted that an important factor in determining whether a
case is "appropriate" is "the availability of another forum
where there is jurisdiction over the named parties," *ibid.*,
but it is hard to see how this factor has a bearing on the
refusal to exercise exclusive jurisdiction.  And in the final
sentence devoted to the subject, the Court gave this expla-
nation: "We incline to a sparing use of our original jurisdic-
tion so that our increasing duties with the appellate docket
will not suffer." *Id.,* at 93–94.

The dicta in *Illinois* v. *Milwaukee* became a holding in

*Arizona* v. *New Mexico*, 425 U. S. 794 (1976) (*per curiam*), where, for the first time, the Court declined to exercise its exclusive jurisdiction in a controversy between two States. See *id.*, at 796–797. While the state parties could not litigate in any other federal court, the Court justified its decision by observing that the "*issues* tendered" were already being litigated in a pending state-court action. *Id.*, at 797.

Since that time, the Court has repeatedly declined to exercise its exclusive original jurisdiction in state-versus-state cases, relying on the rationales provided in these earlier decisions. See, *e.g., Wyoming* v. *Oklahoma*, 502 U. S. 437 (1992); *Louisiana* v. *Mississippi*, 488 U. S. 990 (1988); *Texas* v. *New Mexico*, 462 U. S. 554 (1983); *California* v. *Texas*, 457 U. S. 164 (1982) (*per curiam*). Justices have written separately to question whether we really have discretion to decline to hear such cases. See *Arizona*, 425 U. S., at 798–799 (Stevens, J., concurring); *California* v. *West Virginia*, 454 U. S. 1027 (1981) (Stevens, J., dissenting); *Louisiana*, 488 U. S., at 990 (White, J., dissenting); *Nebraska* v. *Colorado*, 577 U. S. 1211 (2016) (THOMAS, J., joined by ALITO, J., dissenting); *Arizona* v. *California*, 589 U. S. ___ (2020) (same). And scholars have criticized the practice. See, *e.g.,* R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 275 (7th ed. 2015); Shapiro, Jurisdiction and Discretion, 60 N. Y. U. L. Rev. 543, 561, 576 (1985); Stevenson, 1982 B. Y. U. L. Rev*.,* at 747–748. But the Court has not relented.

## II

The practice of refusing to permit the filing of a complaint in cases that fall within our original jurisdiction is questionable, and that is especially true when, as in this case, our original jurisdictional is exclusive. As the history recounted above reveals, the Court adopted this practice without ever providing a convincing justification. The principal reason

provided—that entertaining all suits between two States would crowd out consideration of more important matters on our appellate docket—rests on a dubious factual premise and, in any event, is essentially indistinguishable from the justification given by the imaginary district court judge with a distaste for diversity cases. And the suggestion in *Louisiana* v. *Texas*, 176 U. S., at 15, that we should hesitate to entertain suits between two States because they are of a "delicate and grave" character seems exactly backwards. It is precisely because these disputes have a "delicate and grave" character that they were placed exclusively in our hands. See The Federalist No. 81, p. 487 (C. Rossiter ed. 1961) (A. Hamilton) ("In cases in which a State might happen to be a party, it would ill suit its dignity to be turned over to an inferior tribunal"); *California* v. *Arizona*, 440 U. S. 59, 65–66 (1979). Unlike the regional courts of appeals, the federal district courts, and the state courts, we are not tied to any region or State and were therefore entrusted with the responsibility of adjudicating cases where the suspicion of local bias may run high. Cf. The Federalist No. 80 (A. Hamilton); *Chisholm* v. *Georgia*, 2 Dall. 419, 475 (1793). The present case is just such a suit.

## III

This case involves a dispute between our two most populous States. In 2016, the California Legislature enacted a law, AB 1887, that prohibits state-funded or state-sponsored travel to any State whose laws fail to meet specified standards regarding discrimination on the basis of sexual orientation, gender identity, or gender expression. See Cal. Govt. Code Ann. §11139.8 (West). The law authorizes the California attorney general to identify States that should be subject to the ban, §11139.8(e)(1), and as of the date of the filing of Texas's motion, 11 States had been targeted: Alabama, Iowa, Kansas, Kentucky, Mississippi, North Car-

olina, Oklahoma, South Carolina, South Dakota, Tennessee, and Texas. According to press releases issued by California Attorney General Becerra and the State's website, 9 of the 11 States were subjected to the ban because of laws or practices designed to protect religious liberty.[2] Iowa was placed on the list because it won't provide Medicaid coverage for gender-reassignment surgery. See California Will Restrict State-Funded and State-Sponsored Travel to Iowa (Sept. 13, 2019), https://oag.ca.gov/news/press-releases/attorney-general-becerra-california-will-restrict-state-funded-and-state-1. Travel to North Carolina was banned because the State enacted a law requiring state agencies to maintain separate-sex bathrooms and changing facilities and that prohibited certain local antidiscrimination ordinances. See North Carolina Remains on List of Restricted States (Apr. 12, 2017), https://oag.ca.gov/news/press-releases/attorney-general-xavier-becerra-north-carolina-remains-list-restricted-states. Several of the States placed on California's list have retaliated by imposing similar restrictions on state-funded or state-sponsored travel to California. See Press Release, Office of Okla. Governor, Stitt Issues Executive Order Banning State-Funded Travel to California (Jan. 23, 2020), https://www.governor.ok.gov/articles/press_releases/stitt-issues-executive-order-banning-

————————

[2]See California Will Restrict State-Funded and State-Sponsored Travel to South Carolina (Apr. 2, 2019), https://oag.ca.gov/news/press-releases/attorney-general-becerra-california-will-restrict-state-funded-and-state-0; California Will Restrict State-Funded and State-Sponsored Travel to Oklahoma (June 1, 2018), https://oag.ca.gov/news/press-releases/attorney-general-becerra-california-will-restrict-state-funded-and-state; Alabama, Kentucky, South Dakota and Texas Added to List of Restricted State Travel (June 22, 2017), https://oag.ca.gov/news/press-releases/attorney-general-becerra-alabama-kentucky-south-dakota-and-texas-added-list; Cal. Dept. of Justice, Frequently Asked Questions (FAQs)—AB 1887: Why Are the States on the Travel Prohibition List?, https://www.oag.ca.gov/ab1887/faqs (citing Kansas, Mississippi, and Tennessee laws).

state-funded-; A. Sher, Legislators Strike Back at Califor-
nia Ban on State-Funded Travel to Volunteer State, Chat-
tanooga Times Free Press, Mar. 16, 2018, 2018 WLNR
8221967.

In seeking to file its complaint, Texas argues that this is
precisely the type of dispute for which our exclusive original
jurisdiction was designed.  Texas writes that "'the model
case for [the] invocation of [our] original jurisdiction is a
dispute between States of such seriousness that it would
amount to *casus belli* if the States were fully sovereign.'"
Brief in Support of Motion for Leave To File Bill of Com-
plaint 15  (quoting *Texas* v. *New Mexico*, 462 U. S., at 571,
n. 18; first alteration in original).  Texas notes that eco-
nomic sanctions have often roiled international relations
and have sometimes led to war.  Brief in Support of Motion,
15–18.  And Texas reminds us that the Founders were well
aware of the danger of economic warfare between States.
See *id.,* at 15–16 (citing The Federalist No. 7 (A. Hamilton)).

The Republic of Texas was an independent nation for 10
years (1836–1846), and the California Republic claimed a
similar status for a brief time in 1846.  If they were inde-
pendent nations today, it is entirely possible that their dis-
pute would be the source of considerable international ten-
sion.  As sovereign nations, they might resolve their dispute
by diplomacy, by submitting it to international arbitration,
or by self-help measures.  When they entered the Union,
these two behemoths relinquished the full measure of sov-
ereign power that they once possessed, see *Franchise Tax
Bd.*, 587 U. S., at ___–___ (slip op., at 13–15), but they ac-
quired the right to have their disputes with other States
adjudicated by the Nation's highest court.

The Court now denies Texas that right.  It will not even
permit the filing of Texas's bill of complaint.  This under-
standing of our exclusive original jurisdiction should be
reexamined.  At a minimum, we should note probable juris-
diction and receive briefing and argument on the question.

10     TEXAS *v.* CALIFORNIA

ALITO, J., dissenting

Texas raises novel constitutional claims, arguing that California's travel ban violates the Privileges and Immunities Clause, U. S. Const., Art. IV, §2, cl. 1, the Commerce Clause, Art. I, §8, cl. 3, and the Equal Protection Clause, Amdt. 14, §1.  I express no view regarding any of those claims, but I respectfully dissent from the Court's refusal even to permit the filing of Texas's complaint.